**FILED**
OCT - 6 2005
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NEW SCHOOL FOR ENTERPRISE
    AND DEVELOPMENT
    PUBLIC CHARTER SCHOOL
1920 Bladensburg Road, N.E.
Washington, D.C. 20002

    Plaintiff

    v.

RUBY LEDBETTER,
as next friend of the minor child,
G.E.
and
G.E., individually
3005 20TH Street, SE
Washington, D.C. 20018

Serve

Ruby Ledbetter
3005 20th Street, N.E.
Washington, D.C. 20018

and

Roberta Gambale. Esquire
James E. Brown & Associates
Counsel for Defendants
1220 L Street, N.W. Suite 700
Washington, DC 20005

Defendants

CIVIL ACTION NO.

CASE NUMBER   1:05CV01980

JUDGE: John Garrett Penn

DECK TYPE: Civil Rights (non-employment)

DATE STAMP: 10/06/2005

## **COMPLAINT**

### JURISDICTION

1. Plaintiff brings this Complaint seeking relief pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C.§§ 1400 *et seq*. This Court has jurisdiction pursuant to 28 U.S.C.§§ 1331 and 1343; and pendant jurisdiction pursuant to 5 D.C.Mun. Regs.§§ 3000 *et seq*. Declaratory relief is authorized by 28 U.S.C.§§ 2201 and 2202.

2. Plaintiff is a District of Columbia Public Charter School which has elected to be its own local education agency (LEA) under IDEA, for special education issues.

3. Defendant is the legal guardian of her minor child and they are currently residents of the District of Columbia and claimed D.C. residency for all or part of the time during the underlying administrative proceedings.

### FACTS

4. G. E. is a fifteen (15) year-old student who currently attends the New School for Enterprise and Development Public Charter School ("Enterprise") for the 2004-2005 academic school year.

5. On 29 November 2004, the Headmaster of Enterprise confirmed that G. E. had been removed from the school's role because of excessive absenteeism.

6. Enterprise learned from defendants that G. E. missed school due to a medical condition affecting G. E.'s scalp and therefore embarrassed to attend school. Upon learning of the dermatological condition, the Headmaster of Enterprise allowed G. E. an exception to the no head gear in school policy allowing him to wear head gear in school.

7. Enterprise, concerned about G. E.'s continued absenteeism and therefore failing grades, called a meeting for 2 February 2005 to discuss whether he needed some special education intervention. The Teacher Assistance Team (TAT) meeting would discuss all aspects of G. E.'s education and if necessary seek permission from Ms. Ledbetter to initiate testing.

8. On the day of the meeting, Ms. Ledbetter cancelled the meeting requesting it be rescheduled on 7 February 2005. Enterprise could not guarantee the date, owing to the availability of the TAT.

9. On 4 February 2005, Enterprise learned that Ms. Ledbetter had obtained counsel and through counsel was requesting the testing Enterprise was already willing to conduct.

10. The school attempted on numerous occasions to contact mother and to have her attend a meeting to discuss the testing required for G. E., to get her written authorization for the evaluations, and to get a social history of G. E. and the family.

11. G.E. rarely, if ever attended school during the second half of the 2004-2005 school year.

12. On 18 July 2005, after numerous attempts to test G. E. the school's clinical psychologist began assessing G. E. and completed the assessment on 27 July 2005.[1]

13. Originally, the District of Columbia Public Schools (DCPS) State Enforcement and Investigation Division scheduled a due process hearing to address defendants' allegation that Enterprise failed to provide a free appropriate public education. Due to an emergency in the defendant's family, the hearing officer postponed the hearing and

---

[1] Dr. Patricia Jenkins completed the written assessment, forwarded the assessments on 9 August 2005 and defendants' received the assessment at the hearing.

subsequently schedule the hearing for 24 August 2005.

14. On 24 August 2005 the hearing convened and Enterprise had one witness to testify that her efforts to test G. E. were thwarted by the guardian's failure to meet with the school and the failure of the student to attend school. The records and testimony reflected the numerous attempts Enterprise made to meet with the parent.

15. The defendant, Ms. Ledbetter, refuted some of the claims by Enterprise, but offered no documentary evidence, as Enterprise had, to substantiate her claims. In fact, Ms. Ledbetter's testimony was self-contradictory at times even though see was reading her testimony.

16. During Ms. Ledbetter's testimony, she continually read her testimony from a notebook. Counsel for Enterprise objected to the defendant reading her testimony and requested the hearing officer allow counsel for Enterprise review the notebook the defendant was relying on for her testimony.

17. The hearing officer sustained the objection of the defendant reading her testimony but coached the defendant by stating that the rules of evidence allow her to look at notes to refresh her memory and could she testify without reading the testimony. At that point the defendant stated she could testify without the notebook.

18. Counsel for Enterprise then renewed his request to view the notebook the defendant had been reading. When defendant's counsel objected, counsel for Enterprise told the hearing officer that the rules of evidence allow the parties to review any document any witness uses to refresh their memory, especially since the notebook was not entered into evidence. The hearing officer agreed with Enterprise counsel's interpretation of the rules of

evidence, however overruled the request to review.

19. On 7 September 2005, the hearing officer issued a decision and order finding for the defendants.

20. The hearing officer found that "NSEDPCS did not make sufficient efforts to complete evaluation of the student for special education services within 120 days after February 4, 2005," because "A parent can elect to bypass the TAT process and authorize immediate evaluation for special educations services, as was the case herein." In fact the parent had not given authorization for testing, she only requested tested. The 4 February 2005 letter states in pertinent part, "On behalf of my client, Ruby Ledbetter, legal guardian of the above referenced student, I hereby request that student G.E. be evaluated for special education services...A comprehensive evaluation of the student would include, but is not limited to, the following assessments: (sic) psycho educational evaluation, social history evaluation, and clinical evaluation."[2] A request for generic testing is not the same as "informed consent" required under 34 C.F.R. §300.505 Furthermore, in defining consent, the regulations are quite specific in the requirements under 34 C.F.R. §300.500. To wit:

> Consent means that (i) the parent has been fully informed of all information relevant to the activity for which consent is sought; (ii) the parent understands and agrees in writing to the carrying out of the activity for which his or her consent is sought, and the consent describes that activity and lists the records (if any) that will be released and to whom; and (iii)(A) the parent understands that the granting of consent is voluntary on the part of the parent and may be revoked at anytime.

21. The hearing officer stated "the use of the DCPS Letter of Invitation forms was

---

[2]Personally identifiable information regarding the student omitted. Highlights in original omitted.

unnecessary as all that was required was for the parent to come and sign the consent forms to begin the evaluations." The hearing officer appears to dismiss the importance of informed parental consent and the emphasis Congress placed on protecting the parents rights. After the initial request for testing by anyone, including the parent, the TAT would have to discuss at length the reasons for the request and what types of evaluations are necessary to fulfil the requirements under 34 C.F.R. §300.532. Without this meeting to consider all the relevant facts, informed parental consent is nonexistent.

22. The hearing officer improperly assigned knowledge to Enterprise of an emotional disturbance which would qualify as a disability under IDEA. The student's hair was an issue, however, the school had permitted G.E. to wear a cap to hide the condition. There was no way to know why the student was absent, since he was absent prior to the identification of the medical condition.

## COUNT I

23. Plaintiff repeats and realleges paragraphs 1 - 22.

24. Hearing Officer St. Clair erred in coaching a witness on how to answer a question regarding her use of a notebook during her testimony.

## COUNT II

25. Plaintiff repeats and realleges paragraphs 1 - 24.

26. Hearing Officer St. Clair erred in dismissing a motion to review the document upon which Ms. Ledbetter relied during her testimony.

## COUNT III

27. Plaintiff repeats and realleges paragraphs 1 - 26.

28. Hearing Officer St. Clair erred in finding that NSED could circumvent the procedures outlined in IDEA and not obtain informed consent prior to evaluating G.E.

## COUNT IV

29. Plaintiff repeats and realleges paragraphs 1 - 27.

30. Hearing Officer St. Clair erred in finding that NSED should have known about G.E.'s emotional disturbance prior to testing.

**WHEREFORE**, Plaintiff respectfully requests this court to:

1. Issue a judgment for Plaintiff and against Defendants on all aforementioned counts;

2. Order that the 7 September 2005, Hearing Officer's Decision be reversed, finding no denial of a free, appropriate, public education by NSED PCS.

3. Order an award of attorneys fees and costs to Plaintiff; and

4. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

William E. Houston, Esq.
D.C. Bar No. 450223
Dalton, Dalton, & Houston, P.C.
1008 Pendleton Street
Alexandria, Virginia 22314-1837
(703) 739-4300 (O)
(703) 739-2323 (F)